Michael R. CATHER, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.

United States Elevator and Reliance
Insurance Company,
Intervenors.

No. 01–AA–259.

District of Columbia Court of Appeals.

Argued Sept. 5, 2002.

Decided Oct. 10, 2002.

David M. Schloss, Washington, DC, for petitioner.

Sarah O. Rollman, Silver Spring, MD, for intervenor.

Robert C. Baker, Jr., filed a brief for intervenor.

Robert R. Rigsby, Corporation Counsel at the time, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for the respondent.

Before STEADMAN, SCHWELB, and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

Petitioner, Michael Cather, asks us to review a decision by the Director of the D.C. Department of Employment Services (DOES) that he did not meet his burden of proof in a hearing for modification of a compensation order by showing a sufficient change of condition. We conclude that because the Director did not make findings regarding whether petitioner met his burden of proof by showing a change in *economic* condition, the case must be remanded.

## I.

Mr. Cather was employed by U.S. Elevator, an intervenor in this case, prior to a work-related injury on July 16, 1993. Working as an assistant elevator mechanic, he fell approximately thirty feet into an elevator shaft. After the injury, he received temporary full worker's compensation benefits until he commenced full-time employment with Goodwill Industries on July 26, 1996. At Goodwill Industries, Cather was responsible for distributing and counting towels and sheets and occasionally pushing carts with towels and sheets inside them.[1] During his employment from July 26, 1996 until July 12, 1997, Cather received only partial, as opposed to full, worker's compensation benefits.[2] After Cather voluntarily resigned from his position with Goodwill Industries, he requested reinstatement of full benefits from DOES.

On September 24, 1999, a DOES examiner, after a hearing on the matter, issued a compensation order (hereinafter "C.O.1") granting Cather permanent[3] partial disability benefits, finding that he was not totally disabled. The examiner also found that Cather had voluntarily reduced his income by resigning from his Goodwill Industries' position and that he was still physically capable of performing that job. Cather did not appeal this decision.

However, in March 2000, Cather did file a petition for a modification of the September 24, 1999 compensation order, claiming that his condition had changed both physically and economically since the C.O.1. As evidence of his change in physical condition, Cather presented two reports from his treating physician, Dr. McFarland. One of the reports related to a visit Cather had with Dr. McFarland before the C.O.1 and the second report related to a visit after the C.O.1. The first report, dated May 5, 1999, described Cather's shoulder as having an active elevation of 30 degrees

---

1. Cather was responsible for pushing linen carts weighing over twenty-five pounds until he injured his arm. Cather's physician indicated that he could no longer perform this function and Goodwill Industries accommodated his injury by assigning this duty to another employee.

2. Cather's worker's compensation benefits were reduced by the amount of his salary from his Goodwill Industries' position.

3. The examiner changed Cather's benefits from temporary to permanent because Cather had reached maximum medical improvement at the time of the hearing.

and passive elevation of 130 degrees. The second report, dated January 5, 2000, described the shoulder as having active motion [4] of 20 degrees and passive motion of 70–80 degrees. In addition, the January 5, 2000 report noted that Cather was incapable of performing manual labor and that Cather claimed that he was experiencing more pain of greater duration.[5] In support of his argument that there had been a change in his economic condition, Cather presented evidence that the job he held at Goodwill Industries in linen services no longer existed.

A hearing was held on the modification request and on September 11, 2000 a DOES hearing examiner issued a compensation order (hereinafter "C.O.2") denying Cather's request for modification of C.O.1. The order stated that the evidence presented by Cather failed to prove a change of condition warranting such a modification. Furthermore, the examiner found that because Cather voluntarily limited his income, he was also required to show a change in vocational abilities. Thereafter, Cather appealed the examiner's determination to the Director of DOES.

The Director, concurring with the examiner that Cather had failed to prove a change of physical condition, affirmed the examiner's decision to deny Cather's request to change his disability status. Cather in appealing the Director's decision to this Court, claims that he, in fact, provided sufficient evidence of a change of physical, as well as economic, conditions to prove that he qualifies for total disability. Cather further asserts that the Director's decision that he had failed to offer sufficient evidence to shift the burden is contrary to the remedial purposes of D.C.Code § 32–1524 (2001).[6]

## II.

In reviewing a decision by the Director of DOES we look to see: "(1) whether the agency has made a finding of fact on each material contested issue of fact; (2) whether substantial evidence of record supports each finding; and (3) whether the conclusions of law follow rationally from the findings." *George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment*, 429 A.2d 1342, 1345 (D.C.1981). We accord considerable deference to the agency's interpretation of the Worker's Compensation Act (hereinafter "WCA"). *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 470, 472–73 (D.C.1996).

D.C.Code § 32–1524 permits modifications of compensation orders, but does not discuss the relative burdens, if any, of the parties to such a proceeding.[7] The statute merely states that:

(a) At any time prior to 1 year after the date of the last payment of compensation or at any time prior to 1 year after the rejection of a claim, . . . the Mayor may, upon his own initiative or upon

---

**4.** While Dr. McFarland referred to Cather's active and passive "elevation" in the May 5, 1999 report, he referred to Cather's active and passive "motion" in the January 5, 2000 report.

**5.** Cather also included a third physicians' report (from November 1998) that was not new evidence and, therefore, could not be considered by the examiner in the modification hearing.

**6.** The opinion cites to the 2001 version of the code, the most recent edition.

**7.** See, however, D.C.Code § 2–509(b) (2001), placing the burden of proof in contested cases on the proponent of the order, unless otherwise provided by law.

application of a party in interest, order a review of a compensation case pursuant to the procedures provided in § 32–1520 where there is reason to believe that a change of conditions has occurred which raises issues concerning:

 (1) The fact or the degree of disability or the amount of compensation payable pursuant thereto; ...

(b) A review ordered pursuant to subsection (a) of this section shall be limited solely to new evidence which directly addresses the alleged change of conditions.

(c) Upon the completion of a review conducted pursuant to subsection (a) of this section, the Mayor shall issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation ....

D.C.Code § 32–1524 (2001).

We have interpreted the statute to allow a claimant to demonstrate a change of condition by showing (1) a physical change of condition that impacts upon his or her ability to maintain gainful employment or (2) an economic change of condition. *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 703 A.2d 1225, 1229–30 (D.C.1997) (hereinafter *"Anderson"*). Furthermore, in Anderson we held that if a preliminary showing is made by a claimant concerning a change in condition, either physical or economic, "there might be a rational basis for recognizing a burden shift to the employer thereafter." *Id.* at 1231.

 In this case, the Director decided that there was no rational basis for recognizing a burden shift to the employer based upon Cather's change of physical condition. The Director found that although Cather's physician diagnosed changes in his range of physical motion, the evidence was insufficient to meet Cather's burden of proving that he was totally disabled. The Director found that Cather had failed to prove that he was unable to perform the duties he previously performed for Goodwill Industries and failed to prove that he was unqualified for other light duty employment. In *Washington Post v. District of Columbia* this court noted that "[a] claimant suffers from total disability if his injury prevents him from engaging in the only type of gainful employment for which he is qualified." 675 A.2d 37, 41 (D.C.1996). In this case, while Cather presented evidence that his physical condition had deteriorated, he failed to present any evidence that his physical condition would have prevented him from performing the linen services job he had previously held at Goodwill Industries. A claimant who attempts to prove a change in physical condition that warrants modification of his disability award from partial to total disability must show both an increased disability and an inability to perform the job last held by the claimant. *See Logan v. District of Columbia Dep't of Employment Servs.*, 01–AA–1619, 805 A.2d 237, 242 (D.C.2002). Thus, based on a review of the record, we see no reason to disturb the Director's ruling on this issue because Cather has failed to show a connection between his increased physical disability and his inability to perform the linen services job.

We read Cather's appeal to the Director and his brief to us as further arguing that even if he failed to carry his burden by showing a change in his physical condition, he presented sufficient evidence of his total disability based on his change of economic condition. Cather claimed that his economic condition had changed because (1) the job that had been found for him, linen assistant at Goodwill Industries, no longer existed and (2) he was willing to work. Although the Director indicated in his decision that the claimant could meet

his burden of proof by showing a change in his economic condition,[8] the Director failed to indicate whether the evidence presented by Cather regarding his economic condition was sufficient to meet that burden. *See Mushroom Transp. v. District of Columbia Dep't of Employment Servs.*, 761 A.2d 840, 844 (D.C.2000).

Therefore, we remand this case to the Director to determine whether Cather met his burden to prove a change in economic condition. In making that decision, the Director should consider, *inter alia*, the effect that Cather's voluntary resignation from Goodwill Industries had on his changed economic condition and whether, given that decision to voluntarily limit his income, the evidence presented was nevertheless sufficient to shift the burden to the intervenor to prove employability.

*So ordered.*

8. In his decision, the Director commented on the requirements for shifting the burden of proof from the Claimant to the employer, stating: "It is noted that the Hearing Examiner's statement on Page 5 of the September 11, 2000 Compensation order that 'employer is under no obligation to make a showing of ongoing available work or offer any further vocational training without Claimant having first met his burden of showing a change in conditions' needs some clarification. Claimant could also show a change in condition by producing enough evidence that he was now willing to cooperate with efforts to get him a light duty job within his job restrictions. The burden would then shift to the Employer to show job availability."