Maria Da Gloria VIEIRA, Administratrix for the Estate of Carlos A. Vieira, Deceased, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,

and

Fort Myer Construction Corporation and PMA Group, Intervenors.

No. 97–AA–132.

District of Columbia Court of Appeals.

Argued Nov. 12, 1997.

Decided Dec. 10, 1998.

---

Jack T. Burgess, Fairfax, VA, for petitioner.

Jo Anne Robinson, Interim Corporation Counsel at the time the statement was filed, with whom Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of a brief, for respondent.

Gerard J. Emig, Rockville, MD, for intervenors.

Before WAGNER, Chief Judge, and FARRELL, Associate Judge, and KING, Senior Judge.*

* Judge King was an Associate Judge of the court at the time of argument. His status changed to Senior on November 23, 1998.

WAGNER, Chief Judge:

Maria Da Gloria Vieira, Administratrix for the Estate of Carlos A. Vieira, deceased, challenges the denial of her claim for workers' compensation death benefits filed pursuant to the provisions of the D.C. Workers' Compensation Act of 1979, D.C.Code §§ 36–301 *et seq.*, (1997 Repl.) which the Department of Employment Services (DOES) denied on the ground that the decedent's death did not arise out of his employment. The decedent, Carlos A. Vieira, was killed in an automobile accident on the Fourteenth Street bridge while returning to his home in Virginia after making lane changes to facilitate traffic flow for his employer, intervenor, Fort Myer Construction Corporation (Fort Myer), at a construction site in the District. After working his regularly scheduled 9.5 hour work day, Mr. Vieira had returned home and had come back to the District in time to make the 7:00 p.m. lane change.

The administratrix argues that DOES erred in failing to consider and apply the special errand exception to the general rule that injuries sustained en route to or from work do not fall within the course of employment for purposes of determining eligibility for benefits. In rejecting the claim for benefits, DOES relied primarily upon its decision in *Kolson v. Greyhound Lines,* Dir. Dkt. No. 88–45, H & AS No. 88–2, OWC No. 0123964 (January 26, 1995), which this court subsequently reversed and remanded in *Kolson v. District of Columbia Dep't of Employment Servs.,* 699 A.2d 357 (D.C.1997). In light of our decision in *Kolson,* we reverse and remand for further proceedings consistent with this opinion.

## I.

### Factual Background

Mr. Vieira had been employed by Fort Myer for more than ten years when he died. At the time of Mr. Vieira's death, Fort Myer was performing road work on Suitland Parkway in the District. In addition to his regular work as a laborer for Fort Myer, Mr. Vieira was responsible for opening and closing sections of the highway to accommodate the work and maintain traffic flow at the beginning and end of rush hours. Mr. Vieira's regular work hours were from 6:00 a.m. to 3:30 p.m., for which he was paid at a specific hourly rate. The last lane closure had to be made at 7:00 p.m.; therefore, Mr. Vieira had to return to the job site to shift the lanes at 7:00 p.m. If required to perform this task during his regular work shift, Mr. Vieira was not paid additional compensation. However, if required to return to the job site to set up the lane change, he was paid for two hours work, although the actual time involved in making the lane changes was only approximately thirty minutes. The hearing examiner found that this flat rate of pay was not dependent on the actual time necessary to shift lanes or the worker's travel time to and from the job.

On December 23, 1994, Mr. Vieira finished his regular work schedule and returned home at approximately 4:00 p.m. At 6:00 p.m., he went back to the construction site to move the barricades for the rush hour traffic. He completed the job, and he was involved in a fatal car accident while returning home.

Contending that Mr. Vieira's death arose out of and in the course of his employment with Fort Myer, his widow, the Administratrix of his estate, filed for survivorship benefits on her own behalf and for the benefit of decedent's children. Based essentially upon the foregoing facts, the hearing and appeals examiner (examiner) found that the decedent "performed no work duties for employer while traveling to or from the job site." The examiner also found that "when the fatal accident occurred, decedent was on his way home at the close of his workday, and was not performing duties for his employer." Therefore, the examiner concluded that no work-related event was involved. Relying on the agency's decisions in *Kolson, supra,* and *Grayson v. District of Columbia Dep't of Employment Servs.,* 516 A.2d 909, 911 (D.C. 1986), the examiner denied the claim. She concluded that "[s]ince claimant was coming from work, was performing no work duties for employer and was free to go home or elsewhere, he was not in the course of his employment[;]" therefore, he was not entitled to benefits under the Workers' Compensation Act.

The Director of DOES affirmed the hearing and appeals examiner's decision. In doing so, the Director rejected summarily that Mr. Vieira's claim should come within an exception to the "coming and going" rule because he was on a special errand for his employer and was paid for his travel time. The Director accepted the examiner's factual finding that Mr. Vieira was not paid for travel time, but rather for two hours no matter how long it took to travel between the work site and home. Citing the agency's decision in *Kolson*, the Director concluded that Mr. Vieira's fatal accident did not occur in the course of his employment.

## II.

### A. *Standard of Review*

■■■■ By statute, the scope of our review of the agency's decision is limited to whether the findings of fact are supported by substantial evidence in the record and in accordance with the law. D.C.Code § 1–1510(a)(3)(E); *KOH Sys. v. District of Columbia Dep't of Employment Servs.,* 683 A.2d 446, 449 (D.C.1996) (citation omitted); *Gomillion v. District of Columbia Dep't of Employment Servs.,* 447 A.2d 449, 451 (D.C. 1982) (citation omitted). In cases before DOES, the examiner initially makes findings of fact and conclusions of law, granting or denying the claim. *KOH,* 683 A.2d at 449 (citing *Dell v. District of Columbia Dep't of Employment Servs.,* 499 A.2d 102, 105–06 (D.C.1985)). Upon review, "[t]he Director accordingly is bound by the examiner's findings of fact if supported by substantial record evidence." *Id.* (citing *Santos v. District of Columbia Dep't of Employment Servs.,* 536 A.2d 1085, 1088 (D.C.1988)). Since the Director has final responsibility within the agency for interpreting the statute the agency administers, the Director reviews *de novo* the examiner's legal conclusions. *Id.* (citing *Harris v. District of Columbia Office of Worker's Compensation,* 660 A.2d 404, 407 (D.C.1995); *St. Clair v. District of Columbia Dep't of Employment Servs.,* 658 A.2d 1040, 1042–44 (D.C.1995)). In turn, this court assures that the Director has given deference to the fact finding role of the examiner and that the decision is supported by substantial

evidence. *Id.* (citation omitted). "In contrast, we review the Director's legal conclusions de novo, keeping in mind, however, that when the statutory language is not entirely clear, we ordinarily defer to the Director's interpretation of the governing statute and the agency's own regulations." *Id.* (citations omitted). If the Director's interpretation of the law is in conflict with statutes, regulations, or other legal authorities, it is not entitled to controlling weight. *Id.* at 449–50 (citing *Gunty v. District of Columbia Dep't of Employment Servs.,* 524 A.2d 1192, 1196 (D.C.1987)). "[T]his court has the last word on the law because, ultimately, 'the substantial evidence issue is an issue of law' and 'the reviewing court has the greater expertise.'" *Id.* at 449 (quoting *Dell, supra,* 499 A.2d at 107).

### B. *Analysis*

The Administratrix argues that DOES erred in concluding that the decedent's fatal accident did not arise out of and in the course of his employment with Fort Myer. She contends that the undisputed evidence shows that the decedent was on a "special errand" of opening and closing traffic lanes for his employer at the time that Mr. Vieira was killed. Fort Myer argues that the factual findings of the hearing examiner, particularly that decedent was not performing any work duties for his employer at the time of the accident, were supported by substantial evidence, and therefore, cannot be disturbed. It further contends that the hearing examiner properly applied the facts to the law as set forth in *Grayson, supra,* 516 A.2d at 909 in concluding that the decedent's death did not occur in the course of employment with Fort Myer.

■■■■ In order to be entitled to workers' compensation, the injury or death must arise out of and in the course of the worker's employment. *Kolson, supra,* 699 A.2d at 359 (citing *Grayson, supra,* 516 A.2d at 911). The general rule, often referred to as the "going and coming" rule, is that injuries sustained away from the employer's premises, en route to or from work, do not occur in the course of employment. *Id.* (citing *Grayson, supra,* 516 A.2d at 911 (referencing 1 LAR-

son, The Law of Workmen's Compensation, § 15.00)). Here, there is no question that the decedent sustained the injuries from which he died away from the Suitland Parkway job site. Therefore, the question is whether the claim falls within any exception to the "going and coming" rule.

One such exception, recognized in most jurisdictions, relates to the traveling employee "for whom travel is an integral part of their jobs, such as those who travel to different locations to perform their duties, as differentiated from employees who commute daily from home to a single workplace." *Kolson, supra,* 699 A.2d at 360 (quoting *Boyce v. Potter,* 642 A.2d 1342, 1343 (Me. 1994)). In *Kolson,* the claimant, an interstate bus driver, sought workers' compensation benefits for injuries sustained when he was assaulted at 4:30 a.m. while walking to a hotel, arranged through his employer, because the bus driver was too tired to travel back to his home in Maryland after a twelve-hour shift. *Id.* at 358. The Director of DOES affirmed the hearing examiner's decision, rejecting the claimant's argument for application of the traveling employee exception. *Id.* at 358–59. The examiner had concluded that the rule did not apply because the bus operator had completed his travel and was free to go home. *Id.* at 358. Notwithstanding our decision in *Grayson, supra,* we reversed and remanded, concluding that "when a traveling employee is injured while engaging in a reasonable and foreseeable activity that is reasonably related to or incidental to his or her employment, the injury arises in the course of employment." *Id.* at 361. We held that the bus driver's injuries resulted from a foreseeable risk of his employment which required traveling away from home for long and odd hours. *Id.* Therefore, "the injury he received while walking from the terminal to register at a nearby hotel at 4:30 a.m., with a 'chit' provided by his employer, arose in the course of and out of his employment."[1] *Id.* at 362.

■ In the case now before the court, the hearing examiner found that the decedent's pay for making the last lane change of the day did not include travel time, although the employer paid him for two hours, which exceeded substantially the time required to perform the work at the job site. There was substantial evidence supporting the examiner's factual finding. A co-worker who performed the same function testified that he was paid the same flat two hour fee, although his travel time was greater than decedent's. Other workers who performed the lane changes when there was no construction work in progress were paid for two hours for each period when the lanes shifted. The workers were never told by their supervisor that they were being paid for travel time. There was testimony that those performing the same work were free to do whatever they wanted after completing the lane' closings. The hearing examiner's factual finding that decedent was not paid for travel time has adequate factual support; therefore, there is no basis to disturb it. *See Proulx v. Police & Firemen's Retirement & Relief Bd.,* 430 A.2d 34, 35 (D.C.1981). That fact is not dispositive, however, of the question whether the Administratrix' claim falls within either the traveling employee exception or the special errand exception. In *Kolson, supra,* there was no evidence that the bus driver was being paid for his stay in the District after he completed his last bus run. Nevertheless, we found that Kolson's injury arose out of his employment because it resulted from a risk created by his employment.

Neither the hearing examiner nor the Director had the benefit of this court's decision in *Kolson, supra,* when they decided this case. Therefore, they did not consider whether the circumstances under which decedent met his death constituted "a reasonable and foreseeable activity that is reasonably related to or incidental to his or her employment" or "resulted from a risk created by his employment." *Kolson,* 699 A.2d at 361. The decedent's responsibility for returning to the job site after going home following a full nine and a half hour day presented a special inconvenience and can reasonably be viewed as somewhat different from the typical daily

1. A "chit" is described as a voucher provided at the expense of the employer for overnight lodging for bus drivers at certain specified hotels. *Kolson, supra,* 699 A.2d at 358 n. 1.

commuter who has no further job responsibility after completing a full shift.

There are circumstances where the journey itself has been recognized to be a part of the service rendered by the employee for the benefit of the employer. *See, e.g., O'Reilly v. Roberto Homes, Inc.,* 31 N.J.Super. 387, 107 A.2d 9 (1954) (compensation awarded for fatal injury sustained while construction worker was returning home after performing a thirty minute job of filling oil heaters to keep plaster from freezing); *Kyle v. Greene High School,* 208 Iowa 1037, 226 N.W. 71 (1929) (compensation awarded for fatal injury of janitor en route to school after usual work hours in response to request to turn on lights for basketball game); *see also* 1 LARSON, LARSON'S WORKMEN'S COMPENSATION § 16.11 (1998) Professor Larson describes the special errand rule, recognized in some jurisdictions, as follows:

> When an employee, having identifiable time and space limits on the employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

*Id.* (footnote omitted).

The Director rejected summarily the administratrix' argument that this case should come within the special errand exception. This is an important question of first impression in this jurisdiction which should be considered in light of the policy that workers' compensation statutes should be liberally construed to achieve their humanitarian purpose. *Grayson, supra,* 516 A.2d at 912; *see also Kolson, supra,* 699 A.2d at 359. Even though the court has the last word on the law, it is also important that the Director of DOES address this issue in the first instance in light of its importance and the agency Director's responsibility within the agency for interpreting the statute which the agency administers. *KOH Sys., supra,* 683 A.2d at 449.

For the foregoing reasons, the case is reversed and remanded to the agency for further proceedings consistent with this opinion.

*Reversed and remanded.*